UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Paul Gregory Doucet, by and
through his guardians Denise
Sutton and Amy Doucet

    v.                                       Civil No. 18-cv-627-JL
                                              Opinion No. 2018 DNH 201
FCA US LLC, f/k/a Chrysler
Group LLC

**MEMORANDUM ORDER**

The defendant's motion to dismiss this products-liability action turns on whether the plaintiff's claim arises out of or is related to the defendant's activities in New Hampshire so as to confer personal jurisdiction over the defendant on this court. Plaintiff Paul Gregory Doucet brought this action in Hillsborough Superior Court through his guardians, Denise Sutton and Amy Doucet, alleging that he sustained injuries in a car accident that occurred while he was a passenger in a 2004 Chrysler Sebring convertible. Defendant Fiat Chrysler Automobiles US LLC (FCA) timely removed the action, see 28 U.S.C. § 1441, citing this court's diversity jurisdiction, id. § 1332(a).

FCA moves to dismiss Doucet's complaint, arguing that this court lacks personal jurisdiction over it. See Fed. R. Civ. P. 12(b)(2). After holding oral argument, the court grants that

motion.[1]  Doucet's claim arises from alleged defects in the 2004 Sebring, which FCA's predecessor, Chrysler, LLC, originally sold in Massachusetts.  Though Chrysler, LLC, and subsequently FCA, may have sold other vehicles--including other 2004 Sebrings--in New Hampshire, Doucet has not carried his burden of demonstrating that his claims are causally related to those activities.  The court therefore lacks personal jurisdiction over FCA.

I.   **Applicable legal standard**

"Personal jurisdiction implicates the power of a court over a defendant . . . . [B]oth its source and its outer limits are defined exclusively by the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 143-44 (1st Cir. 1995) (citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)); U.S. Const. amend. V.  "To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  "New Hampshire's long-arm statute reaches to the full

---

[1] FCA also moves to dismiss Doucet's negligence claim against it. See Fed. R. Civ. P. 12(b)(6).  Because the court concludes that it lacks personal jurisdiction over FCA, it need not--and therefore does not--address the merits of that claim.

2

extent that the Constitution allows." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999). The court thus proceeds directly to the usual constitutional due process analysis.

To satisfy the requirements of due process, the defendants must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). Consistent with these threshold requirements, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998).

The plaintiff invokes only this court's specific jurisdiction over the defendant.[2] "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 564 U.S. at 919 (internal quotations omitted). "[T]he

---

[2] As FCA demonstrated in its opening memorandum, see Mem. in Supp. of Mot. to Dismiss (doc. no. 4) at 8-9, the requirements for general jurisdiction over it are not satisfied here. See Daimler AG v. Bauman, 571 U.S. 117, 136 (2014). Doucet does not dispute this, nor allege general jurisdiction in this action. Cf. Plaintiff's Obj. (doc. no. 7) at 5 & n. 6.

3

constitutional test for determining specific jurisdiction . . . has three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Adelson v. Hananel, 652 F.3d 75, 80-81 (1st Cir. 2011) (internal quotations and citations omitted). "[D]ivining personal jurisdiction is 'more an art than a science,'" Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)), and thus necessitates "an individualized assessment and factual analysis of the precise mix of contacts that characterize each case," Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

Doucet bears the burden of satisfying these three components by "proffer[ing] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "To satisfy the prima facie standard in a specific jurisdiction case, a plaintiff may not rest on mere allegations but, rather, must submit competent evidence showing sufficient dispute-related contacts between the defendant and the forum."[3] Carreras v. PMG Collins, LLC, 660

---

[3] The First Circuit Court of Appeals recognizes three methods of determining whether personal jurisdiction exists over the

4

[F.3d 549, 552 (1st Cir. 2011)](#). The court "view[s] this evidence, together with any evidence proffered by the defendant[s], in the light most favorable to the plaintiff and draw[s] all reasonable inferences therefrom in the plaintiff's favor," albeit without "credit[ing] bald allegations or unsupported conclusions." [Id.](#) This approach informs the following factual summary.

## II. Background

Doucet was sitting in the front passenger seat of a 2004 Chrysler Sebring when it collided with another vehicle in Hudson, New Hampshire, on May 24, 2015. A vertical support beam on the passenger side deflected inwards, injuring Doucet.

The 2004 Sebring was designed and manufactured by Chrysler, LLC, which sold it to a dealer in Rhode Island.[4] That dealer transferred it to another in Gloucester, Massachusetts, which

---

defendant: the prima facie method, the preponderance method, and the likelihood method. [A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 n.5 (1st Cir. 2016)](#). The prima facie method is "the least taxing of these standards from a plaintiff's standpoint, and the one most commonly employed in the early stages of litigation." [Rodriguez v. Fulelrton Tires Corp., 115 F.3d 81, 83-4 (1st Cir. 1997)](#). Because the parties in the instant case agree that the prima facie standard is appropriate, see Mem. in Supp. of Mot. to Dismiss (doc. no. 4) at 7; Plaintiff's Obj. (doc. no. 7) at 7, and neither party has requested an evidentiary hearing, the court will apply that standard.

[4] Amended Delecke Decl. (doc. no. 16) ¶ 5.

leased it to a resident of Needham, Massachusetts.[5]  The 2004 Sebring then passed through the hands of two other Massachusetts residents before being sold to a resident of Hudson, New Hampshire, from whom Doucet purchased it in June 2013.[6]

Long after it sold the 2004 Sebring, Chrysler, LLC filed for bankruptcy on April 30, 2009.  See Dearden v. FCA US LLC (In re Old Carco LLC), 582 B.R. 838, 841 (Bankr. S.D.N.Y. Mar. 15, 2018).  Its debtors agreed to sell substantially all of their assets to a newly-formed entity, defendant FCA US LLC, under a Master Transaction Agreement.[7]  Id.  The Bankruptcy Court approved the agreement.  Id.  Under the terms of that agreement and amendments thereto--discussed more thoroughly infra--FCA "acquired [Chrysler, LLC's] assets free and clear of all claims and interests, including claims based on successor liability," such that FCA "is only liable for the claims against [Chrysler, LLC] to the extent they are Assumed Liabilities . . . ."  In re Old Carco LLC, 582 B.R. at 843-44.

**III. Analysis**

FCA moves to dismiss this action, arguing that this court lacks specific personal jurisdiction over it directly or as a

---

[5] Id.

[6] Delecke Decl. (doc. no. 4-5) ¶¶ 6-9.

[7] See Defendant's Ex. 1 (doc. no. 4-1).

successor to Chrysler, LLC.  As discussed supra, "the
constitutional test for determining specific jurisdiction . . .
has three distinct components, namely, relatedness, purposeful
availment . . . and reasonableness."  Adelson, 652 F.3d at 80-81
(internal quotations and citations omitted).  The court
addresses these components in that order, see United States v.
Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) (quoting
Phillips Exeter Acad., 196 F.3d at 288), beginning with
relatedness.  Concluding at the first element that Doucet's
claims do not arise from and are not related to either FCA's or
Chrysler, LLC's conduct in New Hampshire, the court grants that
motion.

A.  **Personal jurisdiction over FCA**

"In order for the extension of personal jurisdiction to
survive constitutional scrutiny, a claim must 'arise out of, or
be related to, the defendant's in-forum activities.'"
Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 142
F.3d 26, 35 (1st Cir. 1998) (quoting Ticketmaster-N.Y., 26 F.3d
at 206).  Where, as here, the "plaintiff['s] claims all sound in
tort," the court "look[s] to whether the plaintiff has
established cause in fact (i.e., the injury would not have
occurred 'but for' the defendant's forum-state activity) and
legal cause (i.e., the defendant's in-state conduct gave birth

7

to the cause of action)." Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20-21 (1st Cir. 2018) (quoting Mass. School of Law, 142 F.3d at 35 (internal quotation marks omitted)). Here, Doucet offers no allegation or evidence that causally connects any action by FCA to his injury. It simply cannot be said that Doucet's injuries would not have occurred "but for [FCA's] forum-state activity." Id.

"Questions of specific jurisdiction," and particularly the relatedness element, "are always tied to the particular claims asserted." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999). Doucet claims that he was injured in New Hampshire due to a defect in his 2004 Sebring (Count 1) or due to Chrysler, LLC's negligence in designing, manufacturing, inspecting, or testing his 2004 Sebring (Count 2). He has produced evidence that FCA is authorized to do business in New Hampshire[8] and that authorized Chrysler dealerships exist in New Hampshire.[9] This evidence suggests contacts between FCA and New Hampshire that, in the court's view, arguably inform the "purposeful availment" component of the applicable three-part test. See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008). But it does not

---

[8] Plaintiff's Ex. 1 (doc. no. 7-1).

[9] Plaintiff's Ex. 2 (doc. no. 7-2).

demonstrate that FCA's contacts with the forum constituted the legal cause or cause-in-fact of his injury. Doucet does not allege or offer any evidence that FCA, which did not exist until 2009, designed, manufactured, inspected, or tested his 2004 Sebring in New Hampshire. Nor does he allege or offer evidence to the effect that FCA had any contact with, or took any action with respect to, his 2004 Sebring in New Hampshire.

Doucet does not dispute that the 2004 Sebring was already in the hands of private owners before FCA even existed. It is, therefore, difficult to see how any action by FCA--let alone any action in New Hampshire--constituted the but-for or legal cause of his injury. Accordingly, Doucet has failed to satisfy the relatedness element of the personal-jurisdiction analysis. The court's "jurisdictional analysis need proceed no further. Since the [plaintiff] has failed to satisfy the first prong of the jurisdictional test, [his] argument for specific jurisdiction must fail." Swiss Am. Bank, 274 F.3d at 625.

B.  **Personal jurisdiction over Chrysler, LLC**

While FCA's New Hampshire activities were indisputably not causally related to the plaintiff's injury, personal jurisdiction may be conferred on a successor entity like FCA under certain circumstances. The court thus turns to whether it has personal jurisdiction over FCA as a successor to Chrysler,

9

LLC.  In this case, FCA's successor liability turns on whether the predecessor's in-state actions subjected it to the court's jurisdiction.

"In order to make a prima facie showing that this court has personal jurisdiction over defendant [FCA] under the doctrine of successor liability, plaintiff must demonstrate (1) that the court has personal jurisdiction over [Chrysler, LLC] and (2) that [FCA] is liable as a successor to [Chrysler, LLC] under New Hampshire law."  McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 57 (D.N.H. 1994) (citing Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1132 (10th Cir. 1991)).  Doucet has failed to make out a prima facie case for personal jurisdiction over Chrysler, LLC, because he has not demonstrated relatedness.[10] The court therefore need not reach the question of whether FCA is liable as a successor to Chrysler, LLC, though FCA focused the bulk of its argument on that element.[11]

Chrysler, LLC originally sold the 2004 Sebring to a dealer in Rhode Island, Smithfield Chrysler Jeep, Inc.[12]  That dealer

---

[10] At oral argument, FCA conceded the first element--that is, that this court would be able to exercise personal jurisdiction over Chrysler, LLC based on the facts of this case.  The court declines to accept that concession, however, concluding that the law dictates the contrary.

[11] E.g., Mem. in Supp. of Mot. to Dismiss (doc. no. 4) at 2, 4, 11.

[12] Amended Delecke Decl. (doc. no. 16) ¶ 5.

transferred the Sebring to Sudbay Chrysler Dodge, Inc., in Gloucester, Massachusetts, which leased it to a resident of Needham, Massachusetts.[13] Sudbay then sold the car to a Gloucester, Massachusetts resident.[14] Only after two more private transfers, including a 2010 sale to a different New Hampshire resident, did Doucet purchase it in June 2013.[15] In short, the parties do not dispute that Chrysler, LLC, and any authorized dealers,[16] sold the 2004 Sebring in Massachusetts and that the car only entered New Hampshire further down the stream of commerce, after a series of private sales.

Though the Court of Appeals has not directly addressed the issue, several courts in this Circuit have taken a fairly expansive view of whether a products-liability claim relates to or arises from the defendant's forum activity. That is, they have found the relatedness element satisfied where the defendant sells the allegedly-defective product line in the forum state, or causes it to be sold there, even if the defendant itself may

---

[13] Id.

[14] Id.

[15] Delecke Decl. (doc. no. 4-5) ¶¶ 7-9.

[16] Construing the facts in Doucet's favor, as the court is obliged to do, see Carreras, 660 F.3d at 552, the court assumes for purposes of this motion that sales through Chrysler, LLC's authorized dealers are attributable to Chrysler, LLC, itself.

11

not have sold the individual item that injured the plaintiff in that state.

For example, the District Court for the District of Massachusetts found relatedness where a Lichtenstein-based manufacturer's contacts with Massachusetts related to the sale and marketing of a line of products, one of which--ultimately sold into Massachusetts by a distributor--injured the plaintiff. Lewis v. Dimeo Const. Co., No. 14-CV-10492-IT, 2015 WL 3407605, at *4 (D. Mass. May 27, 2015) (Talwani, K.). It similarly found relatedness where a foreign defendant distributed a product-line of saws exclusively through Home Depot, which had 45 stores in the Commonwealth, and one of those saws injured the plaintiff there. Micheli v. Techtronic Indus., Co, Ltd., No. CIV.A. 11-10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (Hillman, J.) (adopting report and recommendation). The same court has likewise concluded that, where "[s]uch contacts as [the Japan-based] defendant . . . made with Massachusetts had to do with its own products" and one of those products injured the plaintiff, "[t]here is no incongruity in the relationship between [the defendant's] alleged contacts and the alleged tort." Turpin v. Mori Seiki Co., 56 F. Supp. 2d 121, 126 (D. Mass. 1999) (Gorton, J.). Finally, focusing only on the proximate-cause portion of the relatedness inquiry, the District Court for the District of Maine "determine[ed] that an alleged

injury from the sale of a product in a forum targeted by the manufacturer through its choice of distributors is sufficiently foreseeable to satisfy the relatedness prong of the jurisdictional inquiry." Unicomp, Inc. v. Harcros Pigments, Inc., 994 F. Supp. 24, 25-26 (D. Me. 1998).

Other courts in this circuit have taken a narrower view in products-liability cases, concluding that the relatedness element is not satisfied when the defendant did not sell the actual product that injured the plaintiff in the forum state, despite other in-forum activities.[17] For example, Judge McAuliffe concluded that the court lacked personal jurisdiction over a Switzerland-based airplane manufacturer with respect to design defect claims very similar to Doucet's because the defendant designed, manufactured, and sold its airplanes in Europe. D'Jamoos v. Atlas Aircraft Ctr., Inc., 669 F. Supp. 2d 167, 173-74 (D.N.H. 2009). The court exercised pendent jurisdiction with respect to those claims only after finding that it had personal jurisdiction over that defendant with

---

[17] The defendants do not argue that Chrysler LLC lacked any connection with New Hampshire. See Katz v. Spiniello Companies, 244 F. Supp. 3d 237, 245 (D. Mass. 2017) (no relatedness where defendant never manufactured, marketed, sold, or distributed allegedly-defective airplane part in the forum); West v. Bell Helicopter Textron, Inc., No. 10-CV-214-JL, 2011 WL 285682, at *2 (D.N.H. Jan. 28, 2011) (no relatedless where defendant lacked any connection to the forum).

13

respect to another of the plaintiff's claims.  Id. at 174-75.
Similarly, the District Court for the District of Massachusetts
found no relatedness where the defendant installed allegedly-
defective elements into a boat in North Carolina, did not
transfer the boat to Massachusetts, and had no involvement in
the sales that brought it to Massachusetts.  Ace Am. Ins. Co. v.
Oyster Harbors Marine, Inc., 310 F. Supp. 3d 295, 304 (D. Mass.
2018) (Burroughs, J.).  It drew a similar conclusion where a
plaintiff purchased a boat from a dealer in Virginia and only
his actions--not the dealer's--brought the boat into
Massachusetts, despite the presence of two other authorized
dealers in the Commonwealth.  Killion v. Commonwealth Yachts,
421 F. Supp. 2d 246, 254 (D. Mass. 2006) (Saylor, J.).  Finally,
the District Court for the District of Puerto Rico found no
relatedness where the luggage cart that injured the plaintiff in
Miami was sold in New Jersey, concluding that "[t]he fact that
[the defendant] sold similar products in Puerto Rico is not
sufficient to meet [the relatedness] test."  Terzano v. PFC, 986
F. Supp. 706, 711 (D.P.R. 1997).

    This dichotomy of opinion appears to come down to how these
courts understand causation as expressed in the personal
jurisdiction precedents.  The courts that take a more expansive
view focus solely on the proximate-cause-related foreseeability
element of the relatedness inquiry.  E.g., Lewis v. Dimeo Const.

Co., 2015 WL 3407605, at *4; Turpin, 56 F. Supp. 2d at 126; Micheli, 2012 WL 6087383, at *9; Unicomp, 994 F. Supp. at 25-26. But in a case sounding in tort, the court must consider both "whether the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Scottsdale, 887 F.3d at 20-21. Here, it is not proximate cause that precludes a relatedness finding with respect to Doucet's claims--it is lack of but-for causation.

The most that may possibly be said for the relatedness of Doucet's claim here is that he was injured by a 2004 Chrysler Sebring and that Chrysler (presumably) distributed 2004 Sebrings in New Hampshire.[18] He does not allege that Chrysler, LLC designed, manufactured, inspected, or tested the 2004 Sebring that injured him in New Hampshire. And, though Chrysler, LLC may well have sold <u>other</u> potentially defective 2004 Sebrings in New Hampshire, none of those cars caused Doucet's injury. Chrysler, LLC's activities with respect to the car that allegedly injured him--including its sale in Massachusetts--occurred outside of this forum. This does not amount to the cause-in-fact that the law requires: that "the injury would not

---

[18] Plaintiff's Supp. Mem. (doc. no. 18) at 3-4.

have occurred 'but for' the defendant's forum-state activity." Scottsdale, 887 F.3d at 21. Thus, Doucet's claims do not "arise out of," and are not "related to[ ] the defendant's <u>in-forum activities</u>." Massachusetts Sch. of Law, 142 F.3d at 35 (emphasis added).

There is, perhaps, something unsatisfying or counterintuitive about the proposition that a national corporation can manufacture products distributed in all 50 states, and products literally made to travel between those states, cannot be held accountable in any state where its products cause injuries without showing more. Those concerns, however, are better and more appropriately addressed in the purposeful availment component of the analysis. For better or worse, the relatedness element's requirements of both cause in fact and legal causation mean just that. <u>See</u> Scottsdale, 887 F.3d at 20-21.

Again, because Doucet has not satisfied the relatedness element, he has not carried his burden of demonstrating specific personal jurisdiction. The court therefore need not address the purposeful availment and reasonableness factors, or determine whether FCA is liable as a successor to Chrysler, LLC.

C.  **Motion for jurisdictional discovery**

Because the plaintiff has the burden of demonstrating personal jurisdiction, "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery" in response to a motion to dismiss on that basis. Swiss Am. Bank, 274 F.3d at 626. Doucet has moved for permission to conduct such discovery. Specifically, he seeks discovery into matters such as "the number of vehicles sold by the Defendant in the State of New Hampshire, revenues generated by the sale of vehicles in the State of New Hampshire, dealership agreements illustrating direct, and indirect, control by the Defendant over the dealerships located in New Hampshire, [and] monies spent by Defendant for marketing and advertising in the State of New Hampshire."[19]

---

[19] Mot. for Jurisdictional Discovery (doc. no. 6) ¶ 8.  At oral argument, Doucet also asked for production of service bulletins, to demonstrate that this court may exercise personal jurisdiction over FCA for the same reason the court exercised personal jurisdiction over the Switzerland-based defendant in D'Jamoos, 669 F. Supp. 2d at 170-72.  In that case, Judge McAuliffe concluded that the court could exercise personal jurisdiction over that defendant with respect to the plaintiff's claim that it "produced, sold, and otherwise distributed deficient maintenance manuals and specifications for the inspection and maintenance" of that model of airplane, and that the procedures therein caused the crash, because that defendant distributed those manuals in New Hampshire and its co-defendant

Such information may be relevant to the purposeful availment element. That analysis accounts for whether the defendant "purposefully availed itself of 'the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.'" Phillips, 530 F.3d at 28 (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 61 (1st Cir. 2002)). The Supreme Court has outlined, and the First Circuit has adopted, a "stream of commerce plus" theory to establish those minimum contacts. Sawtelle v. Farrell, 70 F.3d 1381, 1393 (1st Cir. 1995) (citing Asahi Metal Industr. Co. v. Sup. ACt. of CA., Solano County, 480 U.S. 102, 112 (1987)). Under that theory, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi, 480 U.S. at 112. To establish those minimum contacts, then, the plaintiff must demonstrate some additional conduct by the defendant directed toward the forum state. Id. Such additional conduct that indicates a party availed itself to the forum state may include, for example, "advertising in the forum State,

---

used them to inspect and service the actual airplane that crashed. Id. at 70. Doucet has brought no such claim here.

18

establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.

The court has, however, resolved the personal jurisdiction question on relatedness grounds. And the facts relevant to that analysis--specifically, Chrysler, LLC's sale of the 2004 Sebring that allegedly injured Doucet into Massachusetts and not New Hampshire--are undisputed. The court, therefore, denies Doucet's motion for jurisdictional discovery.

## IV. Conclusion

Because Doucet's claims neither arise from nor are related to activities in New Hampshire by the defendant or Chrysler, LLC, the court GRANTS the defendant's motion to dismiss for lack of personal jurisdiction.[20] And because it resolves that motion on undisputed facts, it DENIES Doucet's motion for jurisdictional discovery.[21] The clerk shall enter judgment accordingly and close the case.

---

[20] Document no. 3.

[21] Document no. 6.

**SO ORDERED.**

_/s/ Joseph Laplante_
Joseph N. Laplante
United States District Judge

Dated:    October 5, 2018

cc:  J. Kevin King, Esq.
     John P. Fagan, Esq.
     Christopher J. Hurst, Esq.
     Peter M. Durney, Esq.